UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 16-CV-00984 (JFB)
_____

LAWTON HIGH,

Petitioner,

VERSUS

CHRIS MILLER,

Respondent.

_____

**MEMORANDUM AND ORDER**
May 2, 2017

_____

JOSEPH F. BIANCO, District Judge:

On February 18, 2016, Lawton High ("petitioner" or "High") petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Court. On July 24, 2012, following a jury trial, petitioner was convicted of burglary in the second degree (N.Y. Penal Law § 140.25[2]). (T. 537.)[1] Petitioner was sentenced to a definite period of incarceration of eight years followed by five years of post-release supervision. (S. 6.)[2]

In this habeas petition, petitioner challenges his conviction on the following grounds: (1) the show-up identification was unduly suggestive; (2) the evidence was legally insufficient to establish his guilt of burglary in the second degree; (3) his statement was taken illegally because police lacked probable cause for an arrest; and (4) he was denied effective assistance of trial counsel. (Pet., ECF No. 1, at 19-23.) For the reasons discussed below, the petition is denied in its entirety.

I.  BACKGROUND

A.  Facts

The following facts are adduced from the petition, respondent's memorandum in opposition (ECF No. 6), petitioner's reply (ECF No. 8), and the underlying record (ECF Nos. 6-1 to 6-16).

---

[1] "T." refers to the trial transcript. (ECF Nos. 6-5 to 6-9.)

[2] "S." refers to sentencing transcript. (ECF No. 6-10.)

On March 18, 2011, petitioner and Joseph Marone ("Marone") went to 115 Hilton Ave, a private residence in Garden City, New York, and stayed there overnight without permission or knowledge by the owner. (T. 374, 417-18.) No one lived in the home as Jeffrey Psaki ("Psaki"), the homeowner, was temporarily living in London at this time. (*Id.* at 372-73.) While Psaki was away his stepfather, James Costello ("Costello"), periodically checked on Psaki's home. (*Id.* at 379.) Neither Psaki nor Costello knew or had given petitioner or Marone permission to enter the residence. (*Id.* at 374.) On March 18, 2011, a representative from Psaki's home security system notified Costello that a silent alarm was triggered indicating there was low water in the boiler. (*Id.* at 378.) The next morning Costello went to Psaki's home, entered through the rear door, and discovered Marone crouched under the stairs in the boiler room. (*Id.* at 379-80.) Costello asked Marone what he was doing there and if he was alone. (*Id.* at 380-81.) Marone indicated he came to escape the cold and was not alone. (*Id.*) At this time, Costello told Marone to get his friend and leave the home. (*Id.*) Costello then proceeded outside via the rear door to call the police. (*Id.* at 381.) Once outside, Costello watched Marone and an African-American male, later identified as petitioner, exit through the front of the house and never lost sight of petitioner and Marone until the police detained them. (*Id.* at 381-82.)

Garden City Police Officer Michael Buonaiuto ("Officer Buonaiuto") responded to Costello's 911 call and arrived at 115 Hilton Avenue at approximately 7:45 a.m. (*Id.* at 337.) Upon arriving, Officer Buonaiuto saw petitioner and Marone, standing in the driveway of 113 Hilton Avenue, the residence next to 115 Hilton Avenue. (*Id.* at 338.) As Officer Buonaiuto pulled up, he witnessed petitioner throw a plastic bag into a nearby bush. (*Id.* at 340.) Officer Buonaiuto then ordered petitioner and Marone to the ground. (*Id.* at 340-41.) Police Officer Kevin Reilly ("Officer Reilly") arrived shortly thereafter and placed petitioner and Marone in handcuffs. (*Id.* at 341-42.) At the direction of Officer Buonaiuto, Officer Reilly then proceeded to retrieve the discarded plastic bag in the bushes, which Officer Buonaiuto discovered contained copper piping. (*Id.* at 342.)

Police Officer Rocco Marceda ("Officer Marceda") arrived, and Costello told Officer Marceda that he saw Marone inside the boiler room and saw petitioner as he exited the home with Marone. (*Id.* at 358; H. 69.)[3] A walk-through of the house was then conducted. (H. 69.) The officers and Costello did not see any copper piping missing, but observed a toilet in the basement filled to capacity (signifying the water had been turned off), sleeping bags, and pillows. (T. 357-58, 384.) After leaving the house, Officer Marceda performed a show-up identification with Costello sitting in the passenger seat of Officer Marceda's unmarked police car. (H. 69-70.) Petitioner and Marone stood a few feet apart from each other on the sidewalk with two officers standing nearby. (*Id.* at 70-71.) Officer Marceda drove past petitioner and Marone twice so Costello could have an unobstructed view of them. (*Id.* at 70.) Costello identified petitioner and Marone as the two men in the house and said he witnessed petitioner run out of the house. (T. 383.)

At this time, no arrest was made as Costello did not want to press charges (H. 198; T. 365.) The plastic bag was also returned to petitioner. (T. 344.)

---

[3] "H." refers to the pre-trial hearing transcript. (ECF Nos. 6-1 to 6-4.)

Detective Angelo Barone ("Detective Barone") became involved in this matter the next day, March 20, 2011, to investigate criminal trespass, but marked the case as not needing a follow-up. (H. 84, 116.) Costello ultimately reversed his decision and decided to cooperate with the police investigation. (*Id.* at 198.)

On April 29, 2011, Detective Barone advised Marone of his *Miranda* rights and took his written confession. (*Id.* at 88-89.) Marone ultimately confessed that he and petitioner knowingly entered 115 Hilton Avenue without permission with the intention to stay overnight and steal copper piping in the morning. (*Id.* at 96-97.) Marone stated petitioner turned off the water main triggering the silent alarm. (*Id.* at 97.) After Costello entered the basement, Marone and petitioner ran out of the house where they were immediately stopped by police. (*Id.*) Marone stated Petitioner found copper in the home's backyard, which he and petitioner took and sold. (*Id.* at 97-98.)

On June 6, 2011, Detective Barone arrested petitioner in connection with this incident and advised him of his *Miranda* rights. (T. 407-08.) Petitioner signed a written confession stating he entered 115 Hilton Avenue on March 18, 2011 with Marone to sleep for the night with the intention to steal copper piping in the morning, and the following morning he shut off the water main to take the copper. (*Id.* at 417-18.) Petitioner admitted to taking one piece of copper from outside the house, which he then sold. (*Id.* at 418.)

B. Procedural History

1. State Court Proceedings

a. Pre-Trial Hearing

On June 18, 2012, the Supreme Court of the State of New York, Nassau County, held a pre-trial hearing to determine: (1) the admissibility and testimony of the plastic bag containing copper piping under *Mapp v. Ohio*, 367 U.S. 643 (1961); (2) the admissibility of petitioner's written statement subsequent to his arrest under *People v. Huntley*, 15 N.Y.2d 72 (1965); (3) whether the police had probable cause to arrest petitioner on June 6, 2011 regarding the March 19, 2011 incident under *Dunaway v. New York*, 442 U.S. 200 (1979); and (4) whether the show-up identification was unduly suggestive and therefore should be suppressed under *U.S. v. Wade*, 388 U.S. 218 (1967). (H. 3-7.)

With respect to the *Mapp* issue, the court ruled that the People could elicit testimony concerning the bag with copper piping because probable cause existed. (*Id.* at 269.) In any event, the police could offer testimony as to the bag with copper piping because petitioner and Marone abandoned the bag. (*Id.* at 269-70.)

On the *Huntley* issue, the court concluded petitioner was read his *Miranda* rights, understood them, waived them, and voluntarily provided a statement. (*Id.* at 271.)

As to the *Dunaway* issue, the hearing court concluded that Costello's testimony was credible and that probable cause existed for the arrest. (*Id.* at 267-69.) Costello saw petitioner leaving the home, never lost sight of him until the police arrived, and accurately identified petitioner as the African-American

3

male in the show-up identification. (*Id.* at 268-69.) In addition, Costello had a valid independent basis to have identified petitioner. (*Id.* at 272.) The fact that no arrest was made on March 19 did not diminish probable cause for the police to make an arrest at a later time. (*Id.* at 269.)

Finally, on the *Wade* issue, the court held that the show-up identification was not unduly suggestive and Costello had an independent basis to identify petitioner. (*Id.* at 270, 272.)

### b. Trial and Sentencing

After pleading not guilty to burglary in the second degree (N.Y. Penal Law § 140.25[2]), petitioner proceeded to trial by jury in the Supreme Court, Nassau County on July 16, 2012. At the close of the prosecution's case, both sides rested. (T. 453-54.) Defense counsel then made a general "application to move for a trial order of dismissal," regarding the sufficiency of the People's case. (*Id.* at 455.) The court denied this motion. (*Id.*) Counsel subsequently moved to dismiss the entire case, which the court also denied. (*Id.*) Counsel provided no specifics for either trial motion. (*Id.*)

On July 24, 2012, the jury found petitioner guilty of burglary in the second degree. (*Id.* at 537.) On September 20, 2012, petitioner, as a second felony offender, was sentenced to incarceration for eight years followed by five years of post-release supervision. (S. 6.)

### c. Appeals

Petitioner appealed his conviction to the Supreme Court, Appellate Division, Second Department, arguing that: (1) the People failed to prove petitioner's guilt beyond a reasonable doubt; (2) the verdict was against the great weight of the evidence; (3) the trial court erred in finding petitioner's arrest was supported by probable cause; and (4) petitioner was denied effective assistance of trial counsel. On July 30, 2014, the Supreme Court, Appellate Division, Second Department, unanimously affirmed petitioner's conviction. *People v. High*, 989 N.Y.S.2d 873, 873 (N.Y. App. Div. 2014).

The court rejected petitioner's first and second arguments relating to the sufficiency of the evidence. First, the court held, pursuant to N.Y. Criminal Procedural Law § 470.05[2], that petitioner failed to preserve for appellate review his challenge to the legal sufficiency of the evidence. *Id* at 874. "In any event, viewing the evidence in the light most favorable to the prosecution," the court found that it was legally sufficient to establish petitioner's "guilt of burglary in the second degree beyond a reasonable doubt." *Id.* Furthermore, when conducting its review of the weight of the evidence the court "accord[ed] great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor." *Id*. In doing so, the court concluded the guilty verdict was not against the weight of the evidence. *Id*.

In rejecting petitioner's third argument that the trial court erred in finding petitioner's arrest was supported by probable cause, the Appellate Division held that the "Supreme Court properly denied the suppression of [petitioner's] statements to law enforcement officials" because "the evidence established that, on the date of the incident, police had probable cause to arrest petitioner and, therefore, probable cause existed when the complainant later cooperated with [police] in the apprehension and prosecution of [petitioner]." *Id*. at 873-74. Specifically, the court found that the police had probable cause because the "complainant identified

4

[petitioner] as one of the intruders, . . . the police observed [petitioner] throw a bag into the bushes near the house," and the police discovered copper piping in the bag. *Id*. at 873.

Finally, the court rejected petitioner's fourth argument that he was denied effective assistance of trial counsel. *Id*. at 874. "Since [petitioner's] conviction was supported by legally sufficient evidence" the court concluded that this claim, "based solely [on petitioner's] counsel's failure to preserve his legal insufficiency contention," lacked merit. *Id.*

Petitioner applied for leave to appeal to the New York State Court of Appeals, which the court denied on November 24, 2014. *See People v. High*, 24 N.Y.3d 1044 (2014).

2. The Instant Petition

On February 18, 2016, pursuant to 28 U.S.C. § 2254, petitioner filed a *pro se* Petition for Writ of Habeas Corpus with this Court. (ECF No. 1.) Petitioner raises four issues: (1) the show-up identification was unduly suggestive; (2) the evidence at trial was insufficient to establish petitioner's guilt of burglary in the second degree; (3) the hearing court erred in finding petitioner's arrest was supported by probable cause; and (4) petitioner received ineffective assistance of trial counsel. Respondent filed a memorandum of law in opposition to the petition on June 3, 2016. (ECF No. 6.) Petitioner submitted a reply to the opposition on June 23, 2016. (ECF No. 7.) The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2554. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies

5

that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

Petitioner argues: (1) the show-up identification was unduly suggestive under *Wade*, 388 U.S. 218; (2) the evidence at trial was insufficient to establish his guilt of burglary in the second degree; (3) the hearing court erred in finding his arrest was supported by probable cause; and (4) he received ineffective assistance of trial counsel. (Pet. at 19-23.)

For the reasons discussed below, the Court denies petitioner habeas relief. Petitioner's *Wade*, insufficiency of the evidence, and lack of probable cause claims are procedurally barred, and, in any event, the Court concludes that they lack merit. The ineffective assistance of trial counsel claim also fails on its merits.

### A. *Wade* Claim

Respondent argues this claim should be dismissed because petitioner did not exhaust this claim by fairly presenting it to the state courts and that it is procedurally barred. (Opp'n at 24-25.) The Court agrees.

#### 1. Procedural Bar

##### i. Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), he still must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and

6

"giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

Here, petitioner failed to exhaust this claim because he failed to raise the *Wade* issue on appeal with the Appellate Division or the New York State Court of Appeals. At the trial level, the court held a *Wade* hearing to resolve this issue in the first instance. As such, the record of this hearing, if petitioner had raised this claim on appeal, would have made this claim easily reviewable. By failing to raise this claim, petitioner denied the state courts the opportunity to resolve this constitutional issue. Since petitioner did not fairly present this claim to the appropriate New York State courts "in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights," this claim is unexhausted. *Duncan*, 513 U.S. at 365 (quoting *Picard*, 404 U.S. at 275).

ii. Procedural Default

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted [on] those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceedings." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51).

The procedural bar rule in the review of applications for writs of habeas corpus is

based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, petitioner no longer has any state remedies available to him with respect to the *Wade* claim because New York's procedural rules prevent him from raising it in a New York State court. *See Moss v. New York*, No. 10–CV–5840 (SJF), 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014) (citing C.P.L. § 440.10(2)(c) (barring review of claims that could have been raised on direct appeal); *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) ("[T]he failure to have raised the claim on direct review now forecloses further collateral review in state court."); *Aparico v. Artuz*, 269 F.3d 27, 91 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.")). Therefore, even though petitioner has not exhausted his *Wade* claim, he has procedurally defaulted on it. *See Moss*, 2014 WL 585928, at * 9 (failing to raise claims on direct appeal resulted in procedural default, barring federal habeas review). Thus, it is only reviewable if he can show cause and prejudice or that failure to consider his claim will result in manifest injustice. *See Coleman*, 501 U.S. at 750.

Petitioner has not demonstrated cause and prejudice resulting from this procedural default, nor a miscarriage of justice. First, petitioner fails to offer an explanation for why he failed to raise his claim on direct review. In any event, petitioner cannot show prejudice, much less a manifest injustice, because, as discussed below, the show-up identification was properly admitted and the evidence, including the show-up identification, was sufficient to prove petitioner's guilt. For these reasons, petitioner's *Wade* claim is procedurally barred.

2. Merits

Petitioner claims the show-up identification was unduly suggestive because Costello observed petitioner in handcuffs. (Pet. at 19.) Even assuming this claim is not procedurally barred, this Court concludes the claim lacks merit.

As noted above, in order to succeed on the merits, the state court's adjudication of the claim must have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings." 28 U.S.C. § 2554.

The Supreme Court has established a two-step inquiry for evaluating the admissibility of a pre-trial identification. *Neil v. Biggers*, 409 U.S. 188, 196-97 (1972). Under this inquiry, the court must determine if the pre-trial "identification process was impermissibly suggestive, and if so, whether

it was so suggestive as to raise a very substantial likelihood of irreparable identification." *U.S. v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994) (internal citation omitted). If the court finds the identification process impermissibly suggestive, the identification can nonetheless be admitted into testimony if the court determines the identification to be independently reliable. *Id.* The court looks to five factors to determine if an identification is independently reliable: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." *Neil*, 409 U.S. at 199-200. "'In sum, the identification evidence will be admissible if (a) the procedures were not [unnecessarily] suggestive or (b) the identification has independent reliability.'" *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001)) (alteration in original).

Even though a show-up procedure is inherently suggestive, it is not inherently unconstitutional. *Id.* To violate due process, the show-up identification, viewed in "totality of the circumstances," must be "unnecessarily suggestive." *Id.* (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). Accordingly, "prompt on-the-scene confrontation is 'consistent with good police work'" and is preferred to ensure "the release of an innocent suspect." *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972) (quoting *U.S. v. Sanchez*, 422 F.2d 1198, 1200 (2d Cir. 1970)). The fact that a show-up identification was conducted while the individual was in handcuffs or police custody does "not render the pre-trial identification procedure unnecessarily suggestive" because they are "necessary incidents of an on-the-scene identification." *U.S. v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994).

In this case, the hearing court correctly concluded that the show-up identification was not impermissibly suggestive. "Consistent with good police work," the police conducted an on-the-scene identification with Costello to ensure that the individuals detained were the ones Costello witnessed leaving the residence. *Zelker*, 455 F.2d at 716. Nothing in the record suggests that the procedures were unduly suggestive. Costello sat in the passenger seat of the police car, which drove past petitioner and Marone twice so that Costello had an unobstructed view of both men to make an accurate identification. (H. 70.) From this, Costello accurately identified petitioner as the man who ran out of the house. (*Id.*; T. 383.) Petitioner's assertion that the identification procedure was unduly suggestive because police allowed Costello to observe petitioner in handcuffs is contrary to established federal law. *See Bautista*, 23 F.3d at 730 ("The fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights [] did not render the pre-trial identification procedure unnecessarily suggestive."); *U.S. v. Diaz*, 444 F. App'x 551, 555 (3d Cir. 2011) (stating that the fact that a "suspect is handcuffed and surrounded by police officers during an on-scene show-up" identification does not automatically make the show-up unduly suggestive). During this process, petitioner stood near the police officers, who did not make any indications to influence Costello's identification of petitioner. (H. 16, 71-72.)

In light of this, the show-up procedure was not unduly suggestive.[4]

As the show-up identification was not impermissibly suggestive, the Court concludes this claim lacks merit.

B. Insufficiency of the Evidence Claim

Respondent argues this claim (1) is procedurally barred because petitioner failed to preserve this challenge for appellate review, and, in any event, (2) is without merit. (Opp'n at 13-17.) The Court agrees.

1. Procedural Bar

Like the *Wade* claim, this claim is also barred based on procedural default. Petitioner unsuccessfully raised this claim on direct appeal to the Appellate Division, and the New York State Court of Appeals denied petitioner's leave to appeal. *See High*, 24 N.Y.3d 1044; *High*, 989 N.Y.S.2d at 874. As such, petitioner has adequately exhausted his state remedies regarding this claim. However, this claim is procedurally barred from habeas corpus review.

Petitioner's counsel failed to preserve this claim for appeal by failing to make a motion to dismiss on specific alleged errors, instead making a general motion to dismiss. (T. 455.) As such, on direct appeal the Appellate Division held this issue was not preserved for appellate review pursuant to N.Y. C.P.L. § 470.05[2]. *High*, 989 N.Y.S.2d at 874. It is established that under N.Y. C.P.L. § 470.05[2] "'a general objection is not sufficient to preserve an issue'" for appeal, and this rule constitutes an independent and adequate state grounds to deny relief. *Richardson v. Green*, 497 F.3d 212, 218, 220 (2d Cir. 2007) (quoting *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007)). Since the Appellate Division relied on an independent and adequate state procedural rule to reject this claim, petitioner's federal habeas review is barred.

Furthermore, petitioner has not demonstrated cause and prejudice resulting from this procedural default, nor a miscarriage of justice. Regardless, as discussed below, neither prejudice nor a miscarriage of justice is present because the evidence is sufficient to support his conviction. Therefore, petitioner's insufficiency of the evidence claim is procedurally barred.

2. Merits

Even if this claim was not procedurally barred, it nonetheless lacks merit. Petitioner claims that the evidence presented at trial was legally insufficient to establish his guilt beyond a reasonable doubt because on March 19, 2011 no arrest was made, the police did not find anything missing, and there were no signs of forced entry. (Pet. at 20.)

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "'bears a very heavy burden'" when challenging evidentiary sufficiency in a writ of habeas corpus. *Einaugler v. Supreme Court of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

---

[4] In any event, the identification is independently reliable, given Costello's opportunity to see the petitioner, his confidence in the identification, and the brief period of time between the crime and the show-up.

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115–16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

Petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008 (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In this case, petitioner argues that his conviction was not based on legally sufficient evidence. (Pet. at 20.) The Appellate Division rejected this claim on the merits, holding that, "viewing the evidence in the light most favorable to the prosecution, we find that [the evidence] was legally sufficient to establish [petitioner's] guilt of burglary in the second degree beyond a reasonable doubt." *High*, 989 N.Y.S.2d at 874. For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

In New York, "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and . . . [t]he building is a dwelling." N.Y. Penal Law § 140.25[2]. The New York Court of Appeals has held that burglary is completed when an individual enters a dwelling with the "intent to commit a crime." *People v. Frazier*, 16 N.Y.3d 36, 41 (2010). Contrary to petitioner's contention, burglary in the second degree can be charged even absent forced entry. *See People v. Melendez*, 613 N.Y.S.2d 867, 867-68 (N.Y. App. Div. 1994) (affirming defendant's conviction of second-degree burglary even though defendant contended that the People did not prove that defendant's entry into the home was unlawful because "there was no evidence of forced entry"); *People v. Cooper*, 571 N.Y.S.2d 114, 115-16 (N.Y. App. Div. 1991) (affirming defendant's conviction of burglary in the second degree when no signs of forced entry into the residence existed).

The evidence here is sufficient to support petitioner's conviction. First, petitioner's confession supports his conviction as he admitted to entering the dwelling of 115 Hilton Avenue and possessed the intent to commit a crime. (T. 417-18.) He also admitted that he entered 115 Hilton Avenue, a private residence, without permission and, while inside, decided to steal copper piping. (*Id.* at 371, 374, 417-18.) Second, Costello's identification of petitioner as the individual leaving the home with Marone corroborated petitioner's confession. (*Id.* at 383.) Costello provided a credible identification of petitioner as he watched petitioner and Marone leave 115 Hilton Avenue and never

lost sight of both men until police detained them. (*Id.* at 381-83.) Finally, police witnessed petitioner discard a plastic bag containing copper piping, which petitioner later confessed came from the residence. (*Id.* at 342, 418.) Altogether, this evidence was plainly sufficient to support the conviction. *See People v. Calcaterra*, 512 N.Y.S.2d 173, 173-174 (N.Y. App. Div. 1987) (affirming conviction of burglary in the first degree where defendant was "positively identified by an eyewitness [and] ultimately gave the police oral and written statements confessing to the crime" after he voluntarily waived his *Miranda* rights).

Petitioner argues that, since there were no signs of forced entry and Costello decided not to press charges on the day of the incident, the evidence was insufficient for a conviction. (Pet. at 20.) However, as noted above, burglary in the second degree does not require the presence of forced entry. *See Cooper*, 571 N.Y.S.2d at 115-16. Moreover, even though the police officers had probable cause to arrest petitioner on March 19, nothing required them to make an arrest at that moment. *See Cornett v. Brown*, No. 04CV0754(DGT)(LB), 2006 WL 845568, at *8 (E.D.N.Y. Mar. 30, 2006) (stating there is no "requirement that complaints be sworn or acted upon promptly . . . there does not appear to be a bar to relying on stale complaints in forming probable cause"). In addition, the fact that they did not immediately arrest him does not detract from the sufficiency of the evidence discussed above.

In sum, the Court concludes that the evidence was legally sufficient to establish that a rational trier could find petitioner guilty of burglary in the second degree beyond a reasonable doubt. Therefore, the Court finds that petitioner's sufficiency of the evidence claim is without merit, and thus, the state court's ruling was not contrary to, or an unreasonably application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

C. Lack of Probable Clause Claim

Respondent argues the "lack of probable cause" claim should be dismissed because it is procedurally barred and meritless, and, again, the Court agrees. (Opp'n at 19-24.)

1. Procedural Bar

It is well-settled that Fourth Amendment habeas claims are evaluated using the procedural standard set forth in *Stone v. Powell*, 428 U.S. 465 (1976). Under this standard, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. The Second Circuit has further explained that, under *Powell*, "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Such a breakdown occurs when the state court "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *Id.* at 71 (citation omitted).

Petitioner had a full and fair opportunity to litigate this claim in state court. The Second Circuit has already established that that New York has adequate corrective procedures for litigating Fourth Amendment

claims, which are set forth in N.Y. C.P.L. § 710.10 *et seq. See, e.g., Capellan*, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989))); *Blagrove v. Mantello*, 104 F.3d 350, 350 (2d Cir. 1996) (holding that where defendant's "Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in [his] pro se brief," defendant's "Fourth Amendment argument is barred [from federal habeas review] because the issue was fully and fairly litigated in the state courts"); *see also McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983) (holding that New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that a state provide an opportunity to litigate such claims).

Since New York State provides a facially adequate statutory mechanism for review of Fourth Amendment claims, petitioner must show that an "unconscionable breakdown" occurred. Here, there is no evidence of an unconscionable breakdown in the underlying process. Petitioner was granted a pre-trial evidentiary hearing to determine if probable cause existed. Testimony elicited at the hearing supported the court's decision that the police had probable cause to arrest petitioner and the resulting evidence was admissible at trial. (H. 268-271.) Additionally, petitioner raised his Fourth Amendment claim on direct appeal to the Appellate Division, which affirmed the lower court's ruling, expressly finding that the "Supreme Court properly denied the suppression of [petitioner's] statements to law enforcement officials" because the evidence established that the police had probable cause to arrest petitioner on the date of the incident. *High*, 989 N.Y.S.2d at 873. Therefore, the record clearly establishes that the state court conducted a reasoned and thorough method of inquiry into the relevant facts. In short, having fully availed himself of New York's corrective procedures regarding his Fourth Amendment claim, petitioner had an opportunity for full and fair litigation of the claim and may not raise it on federal habeas review. *Powell*, 428 U.S. at 494.

2. Merits

Even if petitioner could assert this claim, the Court concludes that it lacks merit. The testimony elicited at the pre-trial evidentiary hearing supports the state court's decision that the police had probable cause to arrest petitioner. Specifically, Costello accurately identified petitioner as the African-American male exiting 115 Hilton Avenue to police. (H. 14-16, 195-198) Costello never lost sight of petitioner from the time petitioner exited the home until the police arrived. (*Id.* at 195-98.) This independent reliable identification of petitioner provided the police officers with probable cause to arrest him. *See Keith v. City of New York*, 641 F. App'x 63, 65-66 (2d Cir. 2016) (holding police officers had probable cause to arrest suspect based solely on a single eyewitness identification); *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) ("'[A]bsent circumstances that raise doubts as to the victim's veracity,' a victim's identification is typically sufficient to provide probable cause.") (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *Carson v. Lewis*, 35 F. Supp. 2d 250, 260 (E.D.N.Y. 1999) ("[U]nequivocal identification of a suspect received by police from a victim or eyewitness can provide probable cause."). When police later arrested petitioner, an officer explained his *Miranda* rights to petitioner, who understood these

rights and voluntarily waived them before confessing to the crime. (H. 102-13.)

Based upon the facts presented at the hearing, there is nothing in the record to indicate that the New York Supreme Court's or the Appellate Division's rulings that the police had probable cause to arrest petitioner was contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing. *See* 28 U.S.C. § 2254(d)(1). Accordingly, the Court concludes that the Fourth Amendment claim lacks merit.

D. Ineffective Assistance of Trial Counsel Claim

Petitioner argues he was denied effective assistance of trial counsel because his attorney failed to preserve his legal sufficiency of the evidence claim for appeal. (Pet. at 23-34.) The Court disagrees.

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The performance inquiry examines the reasonableness of trial counsel's actions under all the circumstances," keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (O'Connor, J., concurring)). "In assessing performance, [a court] must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

Petitioner's claim that he received ineffective assistance of trial counsel because of counsel's failure to preserve petitioner's legal sufficiency of the evidence challenge for appeal fails to satisfy the second prong of the *Strickland* test. As discussed above, the evidence was sufficient to support petitioner's conviction for second-degree burglary, and, therefore, even if counsel had properly raised his sufficiency of the evidence challenge in state court, that claim would not have succeeded. Accordingly, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As such, petitioner's ineffective assistance of counsel claim fails.

### IV. CONCLUSION

In sum, petitioner's claims are all procedurally barred, without merit, or both. Thus, this Court concludes that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, the petition for a writ of habeas corpus is denied in its entirety.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 2, 2017
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Madeline Singas, District Attorney, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.